1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DOLORES ANN SHRIGLEY,                      No.  2:13-cv-0254 AC

12             Plaintiff,

13        v.                                     ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for a period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act ("the Act").  The parties' cross-motions

21   for summary judgment are pending.  For the reasons discussed below, the court will deny

22   plaintiff's motion for summary judgment and will grant the Commissioner's cross-motion for

23   summary judgment.

24                               PROCEDURAL BACKGROUND

25        Plaintiff filed an application for DIB on October 16, 2009, alleging disability beginning

26   July 1, 2009.  Administrative Record ("AR") 146-53.  Her claim was denied initially on March

27   26, 2010, and again upon reconsideration on September 14, 2010.  AR 92-100.  On September 8,

28   2011, a hearing was held before administrative law judge ("ALJ") Laura Speck Havens.  AR 42-

                                              1

63.  Plaintiff appeared with counsel at the hearing, at which plaintiff and a vocational expert, Stephen Schmidt, testified.  In a decision dated November 2, 2011, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) of the Act.[1]  AR 22-37.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.  The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: osteoarthritis; obesity; depression.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She can sit, stand or walk up to 6 hours in an 8 hour workday. She can lift or carry up to 50 pounds occasionally, 25 pounds frequently. She has a fair ability to deal with the public, a fair ability to maintain attention and concentration, a fair ability to deal with work stress, a fair ability to understand, remember and carryout complex and detailed job instructions, a fair ability to relate predictably, and a fair ability to demonstrate reliability. Fair is defined as limited but satisfactory.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on March 25, 1952 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8.  The claimant has a limited education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision.

AR 22-37.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on December 5, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-6.

FACTUAL BACKGROUND

Born on March 25, 1952, AR 146, plaintiff was 57 years old on the alleged onset date of disability and 59 years old at the time of the administrative hearing. Plaintiff has a ninth grade education and last worked for twenty years as a certified nurse's assistant. AR 46-48. Plaintiff

3

1    alleges disability since July 1, 2009 as a result of muscle pain and depression.  AR 46.

2                                    LEGAL STANDARDS

3          The Commissioner's decision that a claimant is not disabled will be upheld if the findings

4    of fact are supported by substantial evidence in the record and the proper legal standards were

5    applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

6    Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

7    180 F.3d 1094, 1097 (9th Cir. 1999).

8          The findings of the Commissioner as to any fact, if supported by substantial evidence, are

9    conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

10   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

11   Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

12   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

13   N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

14   substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

15   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

16         Although this court cannot substitute its discretion for that of the Commissioner, the Court

17   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

18   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and

19   Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

20   Cir. 1985).

21         "The ALJ is responsible for determining credibility, resolving conflicts in medical

22   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

23   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

24   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

25   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons

26   stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

27   rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d

28   871, 874 (9th Cir. 2003).

1   The court will not reverse the Commissioner's decision if it is based on harmless error,

2   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

3   ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

4   Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

5   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

6                                          ANALYSIS

7   Plaintiff seeks summary judgment here on the grounds that the ALJ erred in her

8   consideration of the treating psychiatrist's opinion and failed to properly define the term "fair" as

9   used in the residual functional capacity ("RFC").[2]  The Commissioner, in turn, argues that the

10  ALJ's decision is supported by substantial evidence and that the ALJ did not err in her analysis.

11  A.      The ALJ's Decision

12  At the second step of the sequential evaluation process, the ALJ determined that plaintiff

13  has the following severe impairments: osteoarthritis, obesity, and depression.  AR 24.  At the

14  third step of the sequential evaluation process, the ALJ determined that none of plaintiff's

15  impairments, alone or in combination, meets or medically equals one of the listed impairments in

16  20 C.F.R. Part 404, Subpart P, appendix 1.  Upon examination of the record, the ALJ concluded

17  that plaintiff has the residual functional capacity to perform medium work with certain functional

18  limitations.  The ALJ has concluded that plaintiff has a fair ability to deal with the public, a fair

19  ability to maintain attention and concentration, a fair ability to deal with work stress, a fair ability

20  to understand, remember and carryout complex and detailed job instructions, a fair ability to

21  relate predictably, and a fair ability to demonstrate reliability.  The ALJ defined "fair" as "limited

22  but satisfactory."  Although the ALJ concluded that plaintiff would be unable to return to her past

23  relevant work, she did determine that plaintiff, with specified limitations, was able to perform

24  certain jobs that existed in significant numbers in the national economy.  The court has reviewed

25  the record and finds the ALJ's decision to be supported by substantial evidence.

26

27  [2] Plaintiff does not challenge the ALJ's conclusions and RFC assessment as to her physical
    impairments.

28

5

1    B.       Plaintiff's Motion for Summary Judgment

2           1.     Opinion of Examining Psychologist, Dr. Troy Ewing

3         In her moving papers, plaintiff first argues that, although the ALJ gave significant weight

4 to the opinion of examining psychologist, Dr. Troy Ewing, she failed to include in the RFC Dr.

5 Ewing's limitations regarding plaintiff's ability to accept instructions from supervisors and ability

6 to interact with co-workers.

7               a.     Relevant Legal Standards

8         The weight given to medical opinions depends in part on whether they are proffered by

9 treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31

10 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who

11 has a greater opportunity to know and observe the patient as an individual, than the opinion of a

12 non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans

13 v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-

14 examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

15         In evaluating whether the Commissioner properly rejected a medical opinion, the court

16 considers not only its source but also (1) whether contradictory opinions are in the record, and (2)

17 whether clinical findings support the opinions.  The Commissioner may reject an uncontradicted

18 opinion of a treating or examining medical professional only for "clear and convincing" reasons

19 supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating

20 professional's opinion generally is accorded superior weight, if it is contradicted by an examining

21 professional's opinion which is supported by different independent clinical findings, the

22 Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.

23 1995).  A contradicted opinion of a treating or examining professional may be rejected only for

24 "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.

25 This test is met if the Commissioner sets out a detailed and thorough summary of the facts and

26 conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See

27 Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate

28 reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See

1    Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence,

2    is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any

3    event, the Commissioner need not give weight to any conclusory opinion supported by minimal

4    clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating

5    physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

6                              b.    Dr. Troy Ewing's Assessment

7         On February 2, 2010, examining psychiatrist Dr. Troy Ewing performed a comprehensive

8    psychiatric evaluation of plaintiff at the request of the Commissioner.  AR 342-47.  The record

9    reflects that Dr. Ewing reviewed plaintiff's medical records and additional documents, which

10   listed dysthymic disorder.  His general observations were that plaintiff was groomed well,

11   presented in a friendly manner, had normal facial expressions, and exhibited no bizarre behavior.

12   Plaintiff's chief complaint at the evaluation was long-term depression, stating she has "been

13   depressed even [sic] since I got out of high school.  It affects me from working because I cry on

14   the job and cry when I go home.  I am just drained."  AR 342-43.

15        Plaintiff reported to Dr. Ewing that she first experienced depression in high school.  She

16   stated that her symptoms occur on a daily basis and the severity of the symptoms is in the

17   moderate range.  The symptoms are reportedly worse and more persistent than they were when

18   they first began.  Per plaintiff, her treatment history consists of antidepressant medication.  She

19   was in therapy on and off for fifteen years, but was not in any therapy at the time of the

20   evaluation.

21        Following a review of plaintiff's educational, employment, and family and social history,

22   Dr. Ewing conducted a mental status examination.  Plaintiff was noted to be alert, fully oriented,

23   with intact intelligence, fair attention (she was able to recite 5 digits forward and 4 digits in

24   reverse), adequate memory, intact abstract thinking, intact judgment and insight, and intact

25   thought process.  Plaintiff denied any current or recent suicidal ideations.  Dr. Ewing's impression

26   was that plaintiff suffered from Major Depressive Disorder, recurrent, mild.  He assigned a GAF

27   score of 60.

28        Dr. Ewing determined that plaintiff is capable of managing funds, can adequately perform

                                            7

1    simple and complex tasks "as there are no noted intellectual impairments at this time"; is able to

2    perform work activities on a consistent basis without special or additional instruction; has a fair

3    ability to accept instructions from supervisors and interact with coworkers and the public, as

4    "[t]here are some minor social impairments at this time"; has a fair ability to maintain regular

5    attendance in the workplace as mental health symptoms may impact attendance; has a fair ability

6    to complete a normal workday or workweek without interruptions; and has a fair ability to handle

7    normal work related stress from a competitive work environment.

8                    c.    Analysis

9         The ALJ gave significant weight to Dr. Ewing's opinion as consistent with the treatment

10   evidence, not contracted by the opinion of any treating psychiatrist or psychologist, and consistent

11   with the claimant's rather substantial activities of daily living.  The ALJ also noted that, despite

12   plaintiff's claim that she suffered for years from depression, she was able to work for twenty

13   years as a certified nurse's assistant, there is no indication of any worsening of her condition to a

14   degree that would prevent work, and she claimed to stop working due to foot pain, not mental

15   illness.

16        Plaintiff contends the ALJ erred in her consideration of Dr. Ewing's opinion.

17   Specifically, plaintiff argues that although she gave significant weigh to this opinion, the ALJ

18   failed to include Dr. Ewing's limitations regarding plaintiff's ability to accept instructions from

19   supervisors and interact with coworkers.  Plaintiff argues that the ALJ's failure to account for

20   these limitations without providing specific and legitimate reasons for rejecting them constitutes

21   error.

22        An ALJ may properly rely upon only selected portions of a medical opinion while

23   rejecting other parts.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's

24   supported reliance on selected portions of conflicting opinion constitutes substantial evidence).

25   However, such selective reliance must be consistent with the medical record as a whole.  See,

26   e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of

27   medical report that is clearly reliable).  Although "[a]n ALJ is not entitled to pick and choose

28   through a physician's opinion," Sklenar v. Barnhart, 195 F. Supp. 2d 696, 703 n.6 (W.D. Pa.

1    2002) (citations and quotation omitted), he may give specific and legitimate reasons for declining

2    to adopt part of an opinion.  See Magallanes, 881 F.2d at 755 (declining to adopt physician's

3    opinion about onset date).

4         The court has reviewed the ALJ's decision and finds that the ALJ failed to articulate a

5    specific reason for rejecting the portion of Dr. Ewing's opinion addressing plaintiff's ability to

6    accept instructions from supervisors and interact with coworkers.  The court finds any error,

7    however, to be harmless.  To determine whether an error is harmless, a court looks to whether the

8    mistake was non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability

9    conclusion.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

10        During the September 8, 2011 hearing, the vocational expert, Stephen Schmidt, was asked

11   by the ALJ what types of jobs plaintiff could perform with the same mental limitations included

12   in the RFC: a fair ability to deal with the public, a fair ability to maintain attention and

13   concentration, a fair ability to deal with work stress, a fair ability to understand and remember to

14   carry out complex and detailed job instructions, a fair ability to relate predictably, and a fair

15   ability to demonstrate reliability.  See AR 58-59.  Mr. Schmidt testified that, with those

16   limitations, plaintiff could not perform her past relevant work, but could perform other work, such

17   as dishwasher, hand packer, and cleaner.  Id.  When examined by plaintiff's counsel, Mr. Schmidt

18   was asked whether any of those three jobs had any restrictions from dealing with the public or

19   supervisors or co-workers.  AR 60.  Mr. Schmidt responded that he did not have such a restriction

20   in his notes, to which the ALJ stated, "That was there."  Id.  Mr. Schmidt was then asked whether

21   his answer would change if the RFC also included a fair ability to accept instructions from

22   supervisors and interact with co-workers.  Id.  Mr. Schmidt responded, "No, I don't believe that

23   would impact it."  Id.

24        Thus, because the vocational expert's conclusion that plaintiff could perform other jobs in

25   the national economy was unchanged, even with a limitation as to her ability to accept

26   instructions from supervisors and interact with co-workers, and because the ALJ's statement

27   "That was there" convinces the undersigned that the exclusion of the limitation from her RFC was

28   an unintentional clerical error, the court finds no error on this ground.

1        2.      The ALJ's Use of the Term "Fair"

2        Regarding plaintiff's mental limitations as set forth in the RFC, the ALJ defined "fair

3   ability" as "limited but satisfactory."  AR 29.  Plaintiff argues that this was in error because the

4   ALJ did not otherwise define or quantify the meaning of "fair."  Plaintiff contends that because

5   her counsel provided a different definition of "fair" at the hearing (i.e., causing a problem 15% of

6   the time, see AR 61), the ALJ's failure to more precisely define the term renders the vocational

7   expert's conclusion about plaintiff's ability to work ambiguous.

8        "Hypothetical questions posed to the vocational expert must set out all the limitations and

9   restrictions of the particular claimant . . . ."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

10  The testimony of a vocational expert "is valuable only to the extent that it is supported by medical

11  evidence."  Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982). The vocational expert's

12  opinion about a claimant's residual functional capacity has no evidentiary value if the

13  assumptions in the hypothetical are not supported by the record.  Embrey, 849 F.2d at 422.

14       On review, the court finds this to be a meritless argument.  First, the definition used by the

15  ALJ is straightforward, and plaintiff does not explain why it is not.  Second, the vocational expert

16  did not ask for further clarification and testified that a person with the limitations set forth by the

17  ALJ could perform other work.  See AR 58-59.  Third, it is evident that the ALJ borrowed the

18  phrase "fair ability" from Dr. Ewing, who noted, for example, that plaintiff has a fair ability to

19  accept instructions from supervisors and interact with coworkers and the public, as "[t]here are

20  *some minor* social impairments at this time."  AR 346 (emphasis added).

21       Lastly, the hearing transcript reflects that the vocational expert expressed his opinion

22  regarding plaintiff's ability to work as to each of the definitions offered.  See AR 59-60.  That is,

23  with the limitations set forth in the ALJ's RFC and with "fair" defined as "limited but

24  satisfactory," the vocational expert testified that plaintiff could still perform other work.  AR 60.

25  Then, with the definition of "fair" proposed by plaintiff's counsel—causing a problem 15% of the

26  time—the vocational expert testified that such limitations would preclude work entirely.  See AR

27  61.  The definition of "fair" proposed by plaintiff's counsel was offered *after* the vocational

28  expert testified as to plaintiff's ability to work with the ALJ's definition.  Thus, there is no

ambiguity in the vocational expert's testimony.  To the extent plaintiff faults the ALJ for not

adopting her attorney's definition of "fair ability" or resolving any conflict with regard to the

differing definitions, the court notes that counsel was not an acceptable medical source whose

opinion the ALJ needed to resolve.  SSR 06–03p, 2006 WL 2329939 *3–*5; Reddick v. Chater,

157 F.3d 715, 722 (9th Cir. 1998).  Therefore, the court finds no error.

CONCLUSION

Because the undersigned finds no error in the ALJ's reasoning and analysis, IT IS

HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment is denied;

2.  The Commissioner's cross-motion for summary judgment is granted; and

3.  The Clerk of the Court is directed to enter judgment for the Commissioner.

DATED: January 9, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE